# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

MITCHELL A. POHL,

      *Plaintiff,*

v.                            **Case No. 4:17cv181-MW/CAS**

MH SUB I, LLC
d/b/a OFFICITE,

      *Defendant.*

_____/

## ORDER ON SUMMARY JUDGMENT

This Court has considered, without hearing, Plaintiff's motion for partial summary judgment, ECF No. 41, and Defendant's motion for summary judgment. ECF No. 50. Although Plaintiff may be chomping at the bit to get to trial, Defendant's motion is **GRANTED**. Plaintiff's motion is **DENIED**.

### I

This is a case about teeth. Specifically, this is a case about alleged copyright infringement of photographs of teeth.

Dr. Mitchell A. Pohl is a practicing dentist in Boca Raton, Florida. ECF No. 41, at 2. Starting around the year 2000, Pohl began taking before-and-after photographs of his cosmetic dental work for his practice's website. *Id*. at 3; ECF No. 49-1, at 3. He takes these photos to promote his skills in the field of

cosmetic dentistry. ECF No. 40-1, at ¶ 19. One pair of photographs displays his patient Belinda's teeth. ECF No. 49-1, at 5–7. Pohl took these photos in the fall of 2004. ECF No. 41, at 5. The photos consist of two direct shots of the patient's teeth—one before the dental work and the other after the dental work. The patient is revealing her teeth and, in both shots, the photo consists of her teeth, her lips, and a small area around the mouth. ECF No. 49-2.



**Figure 1: The before-and-after photos of Pohl's patient, Belinda. ECF No. 49-2.**

In November 2005, Pohl prepared and filed an application for a copyright. ECF No. 40-1, at ¶ 8; ECF No. 41, at 3. The Register of Copyrights issued TX 6-201-837 with an effective date of November 28, 2005. ECF No. 40-2. On the application, the nature of the authorship was identified as "Text and Photographs;" a handwritten "Web Site" also appears in the space identifying the nature of the authorship. *Id*. The application identified the work's completion in 2000 and November 20, 2000 as the date of its first publication. *Id.* In 2014, Pohl applied for a Supplementary Registration, which the Register of Copyrights issued as TX 6-484-589. ECF No. 40-1, at ¶¶ 14–15; ECF No. 42-

3. The purpose of the Supplementary Registration was to limit the copyright to only the photographs. ECF No. 40-1, at ¶ 15.

In April 2016, Pohl performed a reverse-image search on Google of the before-and-after photos of patient Belinda. ECF No. 40-1, at ¶ 21. In doing so, Pohl claims to have discovered seven websites on which Belinda's toothy visage smiled back at him—seven websites that were not his own. *Id.* at ¶ 22. All seven websites allegedly identified Defendant Officite as the designer or developer. *Id.* at ¶ 23. Rather than brush off this discovery, Pohl, through his attorney, sent a letter to Officite demanding that it cease and desist using these photographs on the discovered websites. ECF No. 40-5, at ¶¶ 5–6. By June 2016, the photographs were no longer on the seven websites. ECF No. 41, at 7; ECF No. 40-5, at ¶¶ 7–8. Pohl brings suit against Officite for copyright infringement.

## II

### A

The parties' lawyers know the drill. Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material" facts are those that might affect the

3

outcome of the case under the governing substantive law, not those that "are irrelevant or unnecessary." *Id.* (citation omitted). Failure by the nonmoving party to prove an essential element of its case, for which it has the burden of proof at trial, entitles the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The standards governing cross-motions for summary judgment are the same, although this Court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the non-movant. *Lozman v. City of Riviera Beach*, 39 F. Supp. 3d 1392, 1404 (S.D. Fla. 2014) (citations omitted).

**B**

This Court first sinks its teeth into Officite's motion for summary judgment. Officite is armed to the teeth in legal arguments—some persuasive, some not. This Court addresses only those arguments necessary to resolve this case and therefore holds its tongue on the issue of damages.

A. *Plaintiff's Copyright Extends to Materials He Claims to Have Concurrently Deposited With the 2005 Registration.*

Officite first attempts to limit the scope of Pohl's 2005 copyright to only his website as it appeared in 2000, rendering the copyright toothless as to the 2004 photos. Officite reasons that because the copyright registration identified the work's completion in 2000 and November 20, 2000 as the date of its first publication, then 2000 is the correct year for the copyright's scope. ECF No. 50,

at 5–9. Because Pohl took the before-and-after shots of Belinda's chompers in 2004, the copyright cannot cover them—or so Officite argues.

Pohl fights tooth and nail against this argument. He explains that he mistakenly identified 2000 as the year of the work's completion and mistakenly identified November 20, 2000 as the date of the photos' first publication. He erroneously interpreted the copyright registration form to direct him to add the date of his *website's* creation and first publication—not the date of the *photographs'* creation and first publication. ECF No. 40-1, at ¶ 16. "I made this mistake due to my unfamiliarity with the copyright application process," Pohl explains. *Id*. at ¶¶ 17 & 18. He states that he should have entered 2005 as the year the work was completed and November 21, 2005 as the date of first publication. *Id*.

Pohl also claims that he deposited materials concurrent with the copyright application that exhibited the website as it existed in 2005. ECF No. 53-1, at 11 ("Q: Which version of the website did you use? A: That's also – you know, whatever version I had up in 2005. Q: Do you know whether you used an earlier version of the website? A: Whatever was up in 2005."). The deposited materials, Pohl claims, came in the form of "a DVD or a CD of [his practice's] website." *Id*. at 10. This CD or DVD included the before-and-after shots at issue. ECF No. 40-1, at ¶ 11.

While Officite asserts that the copyright registration form—with its incorrect dates—is the critical document that limits the scope of copyright protections, *e.g.*, ECF No. 50, at 5–9, Pohl argues that it is the deposited materials that are covered by the copyright. *E.g.* ECF No. 46, at 6. This Court finds Pohl's argument as strong as enamel.

Under 17 U.S.C. § 408(a), "the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section." Under 17 U.S.C. § 408(b)(2), "the material deposited for registration shall include . . . two complete copies or phonorecords of the best edition."

In *Gallup, Inc. v. Kenexa Corp.*, 149 F. App'x 94 (3d Cir. 2005), the Third Circuit interpreted § 408(b)(2) to "indicate that the registration attaches to the material deposited." *Id*. at 95. The *Gallup* decision drew its conclusions from a Southern District of New York decision that contains strong parallels to the current dispute. *Id*. at 96.[1]

In *Dynamic Solutions, Inc. v. Planning & Control, Inc.*, 646 F. Supp. 1329 (S.D.N.Y. 1986), the plaintiff identified 1983 as the date of creation and

---

[1] The Eleventh Circuit has acknowledged the persuasive authority of the United States District Court for the Southern District of New York's copyright decisions because that court "has developed substantial expertise in copyright law as a result of the large number of copyright cases litigated in that district each year." *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1234 n.7 (11th Cir. 2010). This Court, accordingly, gives appropriate weight to Southern District of New York copyright cases.

publication of its copyrighted works but deposited revised materials from 1986. *Id*. at 1341. The defendant claimed the copyright was invalid because the plaintiff failed to deposit a 1983 version with the Copyright Office. *Id*. The court was not convinced. It reasoned that "the plaintiff has deposited with the Copyright Office the versions of the programs which defendants were 'caught' using in 1986 and which it asserts were infringed. The erroneous date entered on the registration form does not affect [the plaintiff's] right to sue." *Id*. at 1342 (quotations in original).

So too here. Pohl entered an erroneous date on the copyright registration form. But he claims to have deposited materials that include the materials Officite was "caught" using. *Id*. In short, this Court looks to the deposited materials to identify the scope of the copyright's protections.

This Court notes that Pohl's deposited materials— the DVD or CD that contained the website as it existed in 2005—are not in the record. And a jury may find Pohl's self-serving testimony to be as persuasive as plaque is useful to molars. Even so, Pohl's testimony is sufficient to create a genuine issue of material fact; namely, whether he deposited the 2005 website, including the photos of patient Belinda's teeth, to the Register of Copyrights.

B. *Plaintiff's Photographs Are Neither Creative Nor Original.*

Even though the deposited materials may have included the before-and-after photos, they are not copyrightable because no reasonable jury could find

the photos are sufficiently creative or original to receive copyright protection. "Once the plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that 'the work in which copyright is claimed is unprotectable (for lack of originality).'" *Latimer*, 601 F.3d at 1233 (quoting *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1541 (11th Cir. 1996)). Officite has met that burden.

Meeting the standard for creativity is not like pulling teeth. "[T]he requisite level of creativity is extremely low; even a slight amount will suffice," the Supreme Court has explained. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 345 (1991). "The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how 'crude, humble, or obvious' it might be." *Id.* (quoting 1 M. NIMMER & D. NIMMER, COPYRIGHT § 1.08 [C][1]). "[E]ven the slightest artistic touch will meet the originality test for a photograph." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1076 (9th Cir. 2000).

Low as this bar is, Pohl's before-and-after photos of Belinda's incisors and canines fail to meet it. Rather, this Court finds that the photos fall into a class of photographs that federal courts throughout the United States have found to be devoid of creativity or originality. *See, e.g.*, *Inspired By Design, LLC v. Sammy's Sew Shop*, LLC, 2016 WL 6093778, at *9 (D. Kan. Oct. 19, 2016) (determining "descriptive pictures presenting the types of pet beds available

8

for sale" not likely to be copyrightable); *Harner v. Wong Corp.*, 2013 WL 11549284, at \*6 (D.N.M. Oct. 31, 2013) (holding that photographs of computers and computer components served utilitarian and descriptive purposes and were therefore "not sufficiently original to be protected by copyright law"); *Custom Dynamics, LLC v. Radiantz LED Lighting, Inc.*, 535 F. Supp. 2d 542, 549 (E.D.N.C. 2008) (finding that photographs of aftermarket motorcycle lighting accessories "were meant to serve the purely utilitarian purpose of displaying examples of its products to potential customers, and do not merit copyright protection"); *and Oriental Art Printing, Inc. v. Goldstar Printing Corp.*, 175 F. Supp. 2d 542, 546–49 (S.D.N.Y. 2001) (holding that generic photos of Chinese food served a utilitarian purpose and were not creative).

Each of the above-cited cases involve photographs that lack any creativity or originality primarily because they serve a utilitarian end—to identify goods or services that a viewing customer can expect from the business. *E.g.*, *Oriental Garden*, 175 F. Supp. 2d at 547 ("[P]laintiffs' photographs serve a purely utilitarian purpose: to identify for restaurant customers those dishes on a take-out menu, such that the customers may achieve a better understanding of what a particular dish contains."). For example, the photographs in *Oriental Garden* featured common Chinese food dishes that were arranged in a variety of patterns, such as circles, semi-circles, ovals, zig-zags, or parallel rows. *Id.* at 544. Sometimes the arrangements had

9

geometric artwork while the food were placed on plates containing a traditional decorative pattern. *Id*. Despite these various arrangements and dish decorations, the court found the photographs "lack any artistic quality" and did not possess the requisite "creative spark" because they served a practical, wholly non-creative purpose. *Id*. at 546.

Pohl does little to brace himself against this line of argument. There is, after all, only so much to argue about the creativity and originality of close-up photographs of teeth. He superficially applies authority holding that originality in photographs "*may* include posing the subjects, lighting, angle, selection of film and camera, evoking the desired expression, and almost any other variant involved." *Rogers v. Koons*, 960 F.2d 301, 307 (2d Cir. 1992) (emphasis added). "Pohl was responsible for, *inter alia*, selecting the camera, posing the subject matter, and determining the lighting and photo angle before taking the photographs," he argues. ECF No. 46, at 9. Such analysis is riddled with cavities that no cursory filling can rectify.

Pohl's described process involves no "creative spark." *Feist*, 499 U.S. at 345. Pohl does not know what type of camera he used—or even if it was a digital camera or one requiring film. ECF No. 53-1, at 8. He does not know if patient Belinda was sitting or standing when he photographed her mouth. *Id*. To the extent he posed her for the camera, it was to tilt her head, lift her chin up or down, instruct her to smile, or to tell her to look at the camera. *Id*. at 5–

10

6. As for lighting, there is no creativity in merely having sufficient lighting in the room where Pohl took the photographs. He offers no evidence regarding the shading or lighting of the photographs. The photo angle involved Pohl "mov[ing] the camera in and out until I get it in focus," *id.* at 7,—the most rudimentary and basic task for photographers since the era of the daguerreotype. The whole process took no more than five minutes. *Id.*

The photographs serve the purely utilitarian purpose of advertising Pohl's services. He admits as much. "I use the before and after pictures of my dental work to promote my skills in the field of cosmetic dentistry." ECF No. 40-1, at ¶ 19.

Surely arranging Chinese food in different patterns after placing them on decorative plates to achieve an aesthetically pleasing look involved more "creative spark" than directing a subject to smile and moving a camera to focus on a portion of the subject's face. If the former is neither creative nor original, then the latter most certainly is not. In short, when viewing the before-and-after photos, no pairs of eyes on a reasonable jury can find any modicum of creativity or originality in these photographs.

## C

This Court next sinks its teeth into Pohl's motion for partial summary judgment on the issue of copyright infringement. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2)

copying of constituent elements of the work that are original." *Feist*, 499 U.S. at 361 (citation omitted). Regarding the first element, a valid copyright registration made before or within five years after first publication of the work "shall constitute prima facie evidence of the validity of the copyright." 17 U.S.C. § 410(c). Regarding the second element, Pohl "must establish, as a factual matter, that the alleged infringer actually copied [his] copyrighted material." *Latimer*, 601 F.3d at 1233.

Pohl's evidence has some bite. He provides a copyright registration, a Supplementary Registration, and affixes patient Belinda's before-and-after shots to his declaration. ECF Nos. 40-1, at 2. Pohl also provides screenshots of the websites on which his photos appeared. ECF No. 40-3. One can spot what could be Belinda's pearly whites on these screenshots.

"If the plaintiff cannot demonstrate access, he or she still may establish copying by showing that the works are strikingly similar." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 n.4 (11th Cir. 2008) (internal quotation marks omitted). "To show substantial similarity, the plaintiff must establish that 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'" *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999) (quoting *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 829 (11th Cir.1982).

The striking or substantial similarity standard does not extend to *all* photos—just works that are "protected expression." *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459 (11th Cir. 1994) (citing *Original Appalachian Artworks, Inc.*, 684 F.2d at 829 & n.11). Thus, a "court may grant summary judgment for a defendant if the similarity between the works concern only noncopyrightable elements . . ." *Id.* As this Court explained above, these photographs are not subject to copyright protection because they are neither creative nor original. Therefore, this Court does not get to the issue of Officite's possession, custody, or control of the photos at issue.

## III

There is nothing remotely creative about taking close-up photographs of teeth. The before-and-after shots served the purely utilitarian purpose of displaying examples of Pohl's dental services to potential customers. They do not merit copyright protection.

Accordingly,

**IT IS ORDERED**:

1. Plaintiff's motion for partial summary judgment, ECF No. 41, is **DENIED**.

2. Defendant's motion for summary judgment, ECF No. 50, is **GRANTED**.

3. The Clerk shall enter judgment stating "Plaintiff's claims against Defendant are dismissed with prejudice."

13

4.  The Clerk shall close the file.

**SO ORDERED on June 20, 2018.**

**s/Mark E. Walker**
**United States District Judge**